1
2
3
4
5

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANA JONES, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **COMPLAINT – CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| MILLIMAN SOLUTIONS, LLC, a Delaware limited liability company, | |
| Defendant. | |

Plaintiff Dana Jones brings this Class Action Complaint, individually and on behalf of all

others similarly situated (the "Class Members"), against Defendant Milliman Solutions, LLC

("Milliman" or "Defendant") alleging as follows based on information and belief, the

investigation of her counsel, and her own personal knowledge.

## NATURE OF THE ACTION

1.      Milliman is an "independent risk management, benefits and technology firm"[1]

that provides consulting services to business around the world, including insurance companies.

---

[1] *See* https://us.milliman.com/en/our-story.

CLASS ACTION COMPLAINT - 1

Among Milliman's customers are MEMBERS Life Insurance Company, CMFG Life Insurance Company, and The Independent Order of Foresters.

2.    Plaintiff and Class Members are current and former customers of Defendant's client companies, including MEMBERS, CMFG, and The Independent Order of Foresters.

3.    As a condition of receiving its services, Milliman requires that its clients' customers, including Plaintiff and Class Members, entrust it with highly sensitive personally identifiable information ("PII"), including but not limited to their names, dates of birth, addresses, and Social Security numbers.

4.    Plaintiff and Class Members provided their PII to Milliman, directly or indirectly, with the reasonable expectation and on the mutual understanding that Milliman would comply with its obligations to keep that information confidential and secure from unauthorized access.

5.    Milliman derives a substantial economic benefit from collecting Plaintiff's and Class Members' PII. Without it, Milliman could not perform its services.

6.    Milliman had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties and to audit, monitor, and verify the integrity of its vendors and affiliates for their own cybersecurity. Milliman has a legal duty to keep consumer's PII safe and confidential.

7.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Milliman assumed legal and equitable duties to ensure the protection of that PII, and it knew or should have known that it was thus responsible for protecting Plaintiff's and Class Members' PII from disclosure.

CLASS ACTION COMPLAINT - 2

1          8.      On or about July 21, 2023, Pension Benefit Information, LLC ("PBI"), on behalf

2  of Milliman, began sending Plaintiff and other Class Members notice (the "Notice Letter")

3  informing them that their PII had been exposed as a result of a breach of one of PBI's tools to

4  store and transfer PII (the "Data Breach").[2]

5          9.      Noticeably absent from the Notice Letter are details of the root cause of the Data

6  Breach, the vulnerabilities that were exploited, and the remedial measures that Milliman

7  undertook to ensure such a breach does not happen again. To date, these critical facts have not

8  been explained or clarified to Plaintiff or the Class Members, who have a vested interest in

9  ensuring that their PII remains protected.

10        10.     In fact, the attacker accessed and acquired files that Milliman shared with PBI

11  containing unencrypted PII of Plaintiff and Class Members, including their Social Security

12  numbers.

13  **JURISDICTION AND VENUE**

14        11.     This Court has jurisdiction over this action under the Class Action Fairness Act

15  ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds

16  $5,000,000, exclusive of interests and costs, there are more than 100 Class Members, and one or

17  more members of the classes, including Plaintiff, are residents of a different state than the

18  Defendant. The Court also has supplemental jurisdiction over the state law claims under

19  28 U.S.C. § 1367.

20

21

22

23        [2] *See* https://agportal-s3bucket.s3.amazonaws.com/databreach/BreachM15351.pdf.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

12.     Defendant is a Delaware limited liability company. On information and belief, Milliman Inc., a Washington corporation, is a member of Defendant Milliman LLC, and Milliman LLC is thus a resident of Washington.

13.     This Court has personal jurisdiction over Defendant because it is headquartered in this District and because Defendant's owners and members are citizens of this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), as Defendant resides, transacts business, committed an illegal or tortious act, has an agent, and/or can be found in this District.

## PARTIES

15.     Plaintiff Dana Jones is a resident of Chattanooga, Tennessee and is a customer of CMFG Life Insurance Company. Ms. Jones received a letter in the mail dated July 21, 2023, informing her that her PII—including her name, address, date of birth, and Social Security number—were involved in the Data Breach.

16.     Defendant Milliman Solutions LLC is a Delaware limited liability company with its principal place of business at 1301 5th Avenue, Suite 3800, Seattle, WA 98101. Defendant collects and maintains the personal information of millions of U.S. consumers.

17.     Defendant's unlawful conduct was authorized, ordered, or performed by its directors, officers, managers, agents, employees, or representatives in the course of their employment and while actively engaged in the management of Defendant's affairs.

//

//

//

CLASS ACTION COMPLAINT - 4

1

### FACTUAL ALLEGATIONS

2

**A.      The Data Breach**

3       18.      As outlined above, Milliman admitted that its vendor, PBI, was the subject of a

4  massive data breach that affected millions of its customers. Between May 29 to May 30, 2023,

5  unauthorized third-party cybercriminals exploited a vulnerability in the file transfer protocol

6  software PBI used to store and transfer Milliman's data.[3]

7       19.      The customer PII the hackers accessed include names, Social Security numbers,

8  addresses, dates of birth, and Social Security numbers.[4]

9       20.      Milliman had obligations to Plaintiff and to Class Members to safeguard their PII

10 and to protect that PII from unauthorized access and disclosure, including by ensuring that its

11 vendors would protect that PII. Indeed, Plaintiff and Class Members provided their PII to their

12 insurers with the reasonable expectation and mutual understanding that their insurers, and

13 anyone their insurers contracted with, would comply with its obligations to keep such

14 information confidential and secure from unauthorized access. Milliman's data security

15 obligations were particularly important given the substantial increase in cyberattacks and/or data

16 breaches of major companies before the Data Breach.

17       21.      Milliman also promises to keep the PII it collects secure, even when it provides

18 that PII to third parties. In its Privacy Policy, Milliman promises that it "has appropriate

19 technical and organizational measures in place to protect against unauthorized or unlawful

20

21

22 _____

      [3] *Id.*

23      [4] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  processing of Personal Data and against accidental loss or destruction of, or damage to, Personal

2  Data held or processed by Milliman."[5]

3  22.   It also promises that "If Milliman shares Personal Data with a third party,

4  Milliman requires that those third parties agree to process Personal Data based on Milliman's

5  instructions *and in compliance with this Privacy Policy*." (emphasis added).[6] It similarly

6  promises that "If Milliman forwards Personal Data to any third party, Milliman requires that

7  those third parties have appropriate technical and organizational measures in place to comply

8  with this Privacy Policy and applicable laws."[7]

9  23.   As a result of the Data Breach, Milliman is urging affected consumers to monitor

10  their accounts for suspicious activity and to safeguard themselves against possible fraud.[8]

11  Furthermore, numerous data security experts are also suggesting that affected consumers take

12  steps to protect their identities.

13  **B.    Plaintiff Expected CMFG and its Vendors to Keep Her Information Secure.**

14  24.   Plaintiff Dana Jones is a customer of CMFG Life Insurance, which, in turn, was a

15  client of Milliman.

16  25.   As a condition of receiving products and services from CMFG, Ms. Jones

17  provided her PII to CMFG, which CMFG then gave to Milliman, who stored and maintained it.

18  26.   Ms. Jones places significant value on the security of her PII, especially when

19  receiving health and life insurance services. She entrusted her sensitive PII to CMFG with the

20

21  [5] *See* Milliman Global Data Privacy Policy, Milliman, *available at* https://us.milliman.com/en/global-privacy-policy.

22  [6] *Id.*
    [7] *Id.*

23  [8] *See* https://agportal-s3bucket.s3.amazonaws.com/databreach/BreachM15351.pdf.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    understanding that CMFG and those with whom CMFG contracted—including Milliman—

2    would keep her information secure and employ reasonable and adequate security measures to

3    ensure that it would not be compromised.

4        27.    Additionally, Plaintiff is very careful about sharing her PII. She has never

5    knowingly transmitted unencrypted PII over the internet or any other unsecured source.

6        28.    Ms. Jones received a letter dated July 21, 2023, informing her that her PII was

7    compromised in the Data Breach.

8        29.    As a result of Milliman's exposure of Ms. Jones's PII, she will have to spend

9    hours attempting to mitigate the affects of the Data Breach, including monitoring financial and

10   other important accounts for fraudulent activity.

11       30.    Given the highly sensitive nature of the information that was compromised,

12   Ms. Jones has already suffered injury and remains at a substantial and imminent risk of future

13   harm. In fact, because her Social Security number is impacted, Ms. Jones faces this risk for her

14   lifetime. She has experienced anxiety concerning whether the bad actors that accessed and

15   exfiltrated her PII will use it to commit identity theft or other financial crimes.

16       31.    In addition, Ms. Jones has a continuing interest in ensuring that her PII, which,

17   upon information and belief, remains in Milliman's possession, is protected, and safeguarded

18   from future breaches.

19   **C.    FTC Security Guidelines Concerning PII**

20       32.    The Federal Trade Commission ("FTC") has established security guidelines and

21   recommendations to help entities protect PII and reduce the likelihood of data breaches.

22

23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    33.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or

2  affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to

3  protect PII by companies like Defendant. Several publications by the FTC outline the importance

4  of implementing reasonable security systems to protect data. The FTC has made clear that

5  protecting sensitive customer data should factor into virtually all business decisions.

6    34.    In 2016, the FTC provided updated security guidelines in a publication titled

7  *Protecting Personal Information: A Guide for Business*. Under these guidelines, companies

8  should protect consumer information they keep; limit the sensitive consumer information they

9  keep; encrypt sensitive information sent to third parties or stored on computer networks; identify

10  and understand network vulnerabilities; regularly run up-to-date anti-malware programs; and pay

11  particular attention to the security of web applications—the software used to inform visitors to a

12  company's website and to retrieve information from the visitors.

13    35.    The FTC recommends that businesses do not maintain payment card information

14  beyond the time needed to process a transaction; restrict employee access to sensitive customer

15  information; require strong passwords be used by employees with access to sensitive customer

16  information; apply security measures that have proven successful in the industry; and verify that

17  third parties with access to sensitive information use reasonable security measures.

18    36.    The FTC also recommends that companies use an intrusion detection system to

19  immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates

20  a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data

21  from the system; and develop a plan to respond effectively to a data breach in the event one

22  occurs.

23

CLASS ACTION COMPLAINT - 8

37.    The FTC has brought several actions to enforce Section 5 of the FTC Act. According to its website:

When companies tell consumers they will safeguard their personal information, the FTC can and does take law enforcement action to make sure that companies live up these promises. The FTC has brought legal actions against organizations that have violated consumers' privacy rights or misled them by failing to maintain security for sensitive consumer information or caused substantial consumer injury. In many of these cases, the FTC has charged the defendants with violating Section 5 of the FTC Act, which bars unfair and deceptive acts and practices in or affecting commerce. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security.[9]

38.    Milliman was aware or should have been aware of its obligations to protect its clients' customers' PII and privacy before and during the Data Breach yet failed to take reasonable steps to protect customers from unauthorized access. Among other violations, Milliman violated its obligations under Section 5 of the FTC Act.

**D.    Milliman Was on Notice of Data Threats and the Inadequacy of Its Vendor's Data Security.**

39.    Milliman was on notice that companies maintaining large amounts of PII during their regular course of business are prime targets for criminals looking to gain unauthorized access to sensitive and valuable information, such as the type of data at issue in this case. Indeed,

---

[9] *Privacy and Security Enforcement*, Fed. Trade Comm'n, https://www.ftc.gov/news-events/topics/protecting-consumer-privacy-security/privacy-security-enforcement.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Milliman bills itself as an expert in "risk management" specifically for "leading insurers, healthcare organizations, and employers."[10]

40.    At all relevant times, Milliman knew, or should have known, that the PII that it collected was a target for malicious actors. Despite such knowledge, and well-publicized cyberattacks on similar companies, Milliman failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class Members' PII from cyber-attacks that Milliman should have anticipated and guarded against.

41.    It is well known among companies that store PII that sensitive information—such as the Social Security numbers accessed in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[11]

42.    In light of recent high profile data breaches, including Microsoft (250 million records, December 2019), T-Mobile (110 million records, August 2021), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Milliman knew or should have known that its electronic records would be targeted by cybercriminals.

---

[10] *See* https://us.milliman.com/en/our-story.
[11] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1 (last visited Feb. 16, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

43.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, take appropriate measures to prepare for, and are able to thwart such an attack.

**E.      The Data Breach Harmed Plaintiff and Class Members**

44.     Plaintiff and Class Members have suffered and will continue to suffer harm because of the Data Breach.

45.     Plaintiff and Class Members face a present and imminent and substantial risk of injury of identity theft and related cyber crimes due to the Data Breach for their respective lifetimes. Once data is stolen, malicious actors will either exploit the data for profit themselves or sell the data on the dark web to someone who intends to exploit the data for profit. Hackers would not incur the time and effort to steal PII and PHI—thereby risking prosecution by listing it for sale on the dark web—if the PII and PHI was not valuable to malicious actors.

46.     The dark web helps ensure users' privacy by effectively hiding server or IP details from the public. Users need special software to access the dark web. Most websites on the dark web are not directly accessible via traditional searches on common search engines and are therefore accessible only by users who know the addresses for those websites.

47.     Malicious actors use PII and PHI to gain access to Class Members' digital life, including bank accounts, social media, and credit card details. During that process, hackers can harvest other sensitive data from the victim's accounts, including personal information of family, friends, and colleagues.

48.     Consumers are injured every time their data is stolen and placed on the dark web, even if they have been victims of previous data breaches. Not only is the likelihood of identity

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

theft increased, but the dark web is not like Google or eBay. It is comprised of multiple discrete repositories of stolen information. Each data breach puts victims at risk of having their information uploaded to different dark web databases and viewed and used by different criminal actors.

49.    PBI, on behalf of Milliman, issued misleading public statements about the Data Breach, including its data breach notification letters,[12] in which it attempts to downplay the seriousness of the Data Breach by stating that there is "no indication of identity theft of fraud in relation to this event" and suggesting that Class Members should take prophylactic steps to protect their data only if they "feel it appropriate to do so."

50.    Milliman's intentionally misleading public statements ignore the serious harm its security flaws caused to the Class. Even worse, those statements could convince Class Members that they do not need to take steps to protect themselves.

51.    The data security community agrees that the PII and PHI compromised in the Data Breach greatly increases Class Members' risk of identity theft and fraud.

52.    As Justin Fier, senior vice president for AI security company Darktrace, observed following a recent data breach at T-Mobile, "[t]here are dozens of ways that the information that was stolen could be weaponized." He added that such a massive treasure trove of consumer profiles could be of use to everyone from nation-state hackers to criminal syndicates.[13]

---

[12] *Available at* https://agportal-s3bucket.s3.amazonaws.com/databreach/BreachM15351.pdf
[13] https://www.cnet.com/tech/services-and-software/t-mobile-gets-hacked-again-is-the-un-carrier-un-safe/.

CLASS ACTION COMPLAINT - 12

53.     Criminals can use the PII that Milliman lost to target Class Members for imposter scams, a type of fraud initiated by a person who pretends to be someone the victim can trust in order to steal sensitive data or money.[14]

54.     The PII accessed in the Data Breach therefore has significant value to the hackers that have already sold or attempted to sell that information and may do so again.

55.     Malicious actors can also use Class Members' PII to open new financial accounts, open new utility accounts, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."

56.     As established above, the PII accessed in the Data Breach is also very valuable to Milliman. Milliman collects, retains, and uses this information to increase its profits. Milliman's customers value the privacy of this information and expect Milliman to allocate enough resources to ensure it is adequately protected. Customers would not have done business with Milliman, provided the PII of their own customers or Milliman, and/or paid the same prices for Milliman's goods and services had they known Milliman did not implement reasonable security measures to protect PII. Milliman states that its mission is to "protect the health and financial well-being of people everywhere."[15] Customers expect that the payments they make to Milliman incorporate the costs to implement reasonable security measures to protect customers' PII as part of protecting their "health and financial well-being."

57.     Indeed, "[f]irms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and

---

[14] *See* https://consumer.ftc.gov/features/imposter-scams.
[15] *See* https://us.milliman.com/en/our-story.

CLASS ACTION COMPLAINT - 13

regulatory frameworks."[16] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[17] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market" or the "dark web" for many years.

58.     As a result of their real and significant value, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated, and it can become more valuable to thieves and more damaging to victims.

59.     The PII accessed in the Data Breach is also very valuable to Plaintiff and Class Members. Consumers often exchange personal information for goods and services. For example, consumers often exchange their personal information for access to wifi in places like airports and coffee shops. Likewise, consumers often trade their names and email addresses for special discounts (*e.g.*, sign-up coupons exchanged for email addresses). Consumers use their unique and valuable PII to access the financial sector, including when obtaining a mortgage, credit card, or business loan. As a result of the Data Breach, Plaintiff and Class Members' PII has been compromised and lost significant value.

---

[16] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD DIGITAL ECONOMY PAPERS, No. 220, Apr. 2, 2013, https://doi.org/10.1787/5k486qtxldmq-en.

[17] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

60.    Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[18]

61.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

62.    Due to the immutable nature of the personal information impacted here, Plaintiff and Class Members will face a risk of injury due to the Data Breach for their respective lifetimes. Malicious actors often wait months or years to use the personal information obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen personal information, meaning individuals can be the victim of several cyber crimes stemming from a single data breach. Finally, there is often significant lag time between when a person suffers harm due to theft of their PII and when they discover the harm. For example, victims rarely know that certain accounts have been opened in their name until contacted by collections agencies. Plaintiff and Class Members will therefore need to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them.

---

[18] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RES. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

CLASS ACTION COMPLAINT - 15

63.     Even when reimbursed for money stolen due to a data breach, consumers are not made whole because the reimbursement fails to compensate for the significant time and money required to repair the impact of the fraud.

64.     Victims of identity theft also experience harm beyond economic effects. According to a 2018 study by the Identity Theft Resource Center, 32% of identity theft victims experienced negative effects at work (either with their boss or coworkers) and 8% experienced negative effects at school (either with school officials or other students).

65.     The U.S. Government Accountability Office likewise determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[19]

66.     Plaintiff and Class Members have failed to receive the value of the Milliman services for which their insurance companies paid.

**F.     Defendant Failed to Take Reasonable Steps to Protect its Customers' PII**

67.     Milliman requires its customers to provide a significant amount of highly personal and confidential PII to purchase its services. Milliman collects, stores, and uses this data to maximize profits while failing to encrypt or protect it properly.

68.     Milliman has legal duties to protect its customers' PII by implementing reasonable security features. This duty is further defined by federal and state guidelines and laws, including the FTC Act, as well as industry norms.

---

[19] *See* https://www.gao.gov/assets/gao-07-737.pdf.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

69.     Defendant breached its duties by failing to implement reasonable safeguards to ensure Plaintiff's and Class Members' PII was adequately protected. As a direct and proximate result of this breach of duty, the Data Breach occurred, and Plaintiff and Class Members were harmed.

70.     Defendant could have prevented this Data Breach by properly securing and encrypting the systems containing the PII of Plaintiff and Class Members and ensuring that PBI did so as well.

71.     Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

72.     Experts have identified several best practices that business like Milliman should implement at a minimum, including, but not limited to: educating all employees; requiring strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

73.     Other best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

74.     When using a file transfer protocol, moreover, best cybersecurity practices include not storing data or information longer than necessary to accomplish the transfer. By

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

storing Plaintiff's and Class Members' PII in its file transfer protocol longer than was necessary to accomplish the transfer, PBI—for whom Milliman was responsible—left Plaintiff's and Class Members' PII vulnerable to access and theft, which is what ultimately happened.

75.     The Data Breach was a reasonably foreseeable consequence of Defendant's failure to ensure that its vendors used adequate security systems. Milliman certainly has the resources to ensure that its vendors implement reasonable security systems to prevent or limit damage from data breaches. Even so, Milliman failed to properly invest in that data security. Had Milliman ensured that its vendors implemented reasonable data security systems and procedures (*i.e.*, followed guidelines from industry experts and state and federal governments), then it likely could have prevented hackers from accessing its customers' PII.

76.     Milliman's failure to ensure that its vendors implemented reasonable security systems has caused Plaintiff and Class Members to suffer and continue to suffer harm that adversely impact Plaintiff and Class Members economically, emotionally, and/or socially. As discussed above, Plaintiff and Class Members now face a substantial, imminent, and ongoing threat of identity theft, scams, and resulting harm. These individuals now must spend significant time and money to continuously monitor their accounts and credit scores and diligently sift out phishing communications to limit potential adverse effects of the Data Breach, regardless of whether any Class Member ultimately falls victim to identity theft.

77.     In sum, Plaintiff and Class Members were injured as follows: (i) theft of their PII and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII; (iii) diminution in value of their PII; (iv) the certain, ongoing, and imminent  threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (v)

CLASS ACTION COMPLAINT - 18

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; and/or (vi) nominal damages.

78.    Even though PBI has decided to offer free credit monitoring for one year to affected individuals, this is insufficient to protect Plaintiff and Class Members. As discussed above, the threat of identity theft and fraud from the Data Breach will extend for many years and cost Plaintiff and the Classes significant time and effort.

79.    Plaintiff and Class Members therefore have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages) that protects them from these long-term threats. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

## CLASS ACTION ALLEGATIONS

80.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23 as representative of the Classes defined as follows:

(a)    **The Nationwide Class:** All U.S. residents whose data was accessed in the Data Breach.

(b)    **The Tennessee Subclass:** All Tennessee residents whose data was accessed in the Data Breach.

81.    Specifically excluded from the Classes are Defendant; its officers, directors, or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded from the Classes are any federal,

CLASS ACTION COMPLAINT - 19

1    state, or local governmental entities, any judicial officer presiding over this action and the

2    members of their immediate family and judicial staff, and any juror assigned to this action.

3        82.    Class Identity: The members of the Classes are readily identifiable and

4    ascertainable. Defendant and/or its affiliates, among others, possess the information to identify

5    and contact Class Members.

6        83.    Numerosity: The members of the Classes are so numerous that joinder of all of

7    them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this

8    time, based on information and belief, the Nationwide Class of approximately 1,280,823

9    individuals whose data was compromised in the Data Breach, and the Tennessee Class consists

10    of thousands of customers whose data was compromised in the Data Breach.

11        84.    Typicality: Plaintiff's claims are typical of the claims of the members of the

12    classes because all Class Members had their PII accessed in the Data Breach and were harmed as

13    a result.

14        85.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes.

15    Plaintiff has no interest antagonistic to those of the classes and is aligned with Class Members'

16    interests because Plaintiff was subject to the same Data Breach as Class Members and faces

17    similar threats due to the Data Breach as Class Members. Plaintiff has also retained competent

18    counsel with significant experience litigating complex class actions, including Data Breach cases

19    involving multiple classes.

20        86.    Commonality and Predominance: There are questions of law and fact common to

21    the Classes. These common questions predominate over any questions affecting only individual

22    Class Members. The common questions of law and fact include, without limitation:

23

CLASS ACTION COMPLAINT - 20

a. Whether Defendant owed Plaintiff and Class Members a duty to implement and maintain reasonable security procedures and practices to protect their personal information, and to ensure that its vendors did so as well;

b. Whether Defendant acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class Members' PII;

c. Whether Defendant breached its duty to implement reasonable security systems to protect Plaintiff's and Class Members' PII, and to ensure that its vendors did so as well;

d. Whether Defendant breached its contractual obligations to its customers to protect Plaintiff's and Class Members' PII;

e. Whether Plaintiff and Class Members were intended third party beneficiaries of Defendant's contracts with its customers;

f. Whether Defendant's breach of its duty to implement reasonable security systems, and its duty to ensure that its vendors did the same, directly and/or proximately caused damages to Plaintiff and Class Members;

g. Whether Defendant adequately addressed and fixed the vulnerabilities that enabled the Data Breach;

h. When Defendant learned of the Data Breach and whether its response was adequate;

i. Whether Plaintiff and other Class Members are entitled to credit monitoring and other injunctive relief; and,

CLASS ACTION COMPLAINT - 21

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

j.    Whether Class Members are entitled to compensatory damages, punitive

damages, and/or statutory or civil penalties as a result of the Data Breach.

87.    Defendant has engaged in a common course of conduct, and Class Members have been similarly impacted by Defendant's failure to maintain reasonable security procedures and practices to protect customers' PII and to ensure that the vendors to whom it provided Plaintiff's and Class Members' PII did the same.

88.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most if not all Class Members would find the cost of litigating their individual claims prohibitively high and have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and risk inconsistent treatment of claims arising from the same set of facts and occurrences.

89.    Plaintiff knows of no difficulty likely to be encountered in the maintenance of this action as a class action under Federal Rule of Civil Procedure 23.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Nationwide Class or Alternatively State-Specific Subclasses)**

90.    Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

CLASS ACTION COMPLAINT - 22

91.    Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in protecting their PII from unauthorized disclosure or access. Defendant breached its duty of care by failing to ensure that the third parties to whom it provided Plaintiff's and Class Members' PII implement reasonable security procedures and practices to protect that PII. Among other things, Defendant failed to ensure that third party vendors: (i) implemented security systems and practices consistent with federal and state laws and guidelines; and (ii) implemented security systems and practices consistent with industry norms.

92.    Defendant knew or should have known that Plaintiff's and Class Members' PII was highly sought after by cyber criminals and that Plaintiff and Class Members would suffer significant harm if their PII was compromised by hackers.

93.    Defendant also knew or should have known that timely detection and disclosure of the Data Breach was required and necessary to allow Plaintiff and Class Members to take appropriate actions to mitigate the resulting harm. These efforts include, but are not limited to, freezing accounts, changing passwords, monitoring credit scores/profiles for fraudulent charges, contacting financial institutions, and cancelling or monitoring government-issued IDs such as passports and driver's licenses.

94.    Defendant had a special relationship with Plaintiff and Class Members. Defendant's customers entrusted Defendant with several pieces of Plaintiff's and Class Members' PII so that Defendant would provide services to its customers. Defendant's customers were required to provide this PII when purchasing or attempting to purchase Defendant's services. Plaintiff and Class Members were led to believe Defendant would take reasonable

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    precautions to protect their PII and would timely inform them if their PII was compromised,

2    which Defendant failed to do.

3         95.    The harm that Plaintiff and Class Members suffered (and continue to suffer) was

4    the reasonably foreseeable product of Defendant's breach of its duty of care. Defendant failed to

5    ensure that the third parties to whom it provided PII enacted reasonable security procedures and

6    practices, and Plaintiff and Class Members were the foreseeable victims of data theft that

7    exploited the inadequate security measures. The PII accessed in the Data Breach is precisely the

8    type of information that cyber criminals seek and use to commit cyber crimes.

9         96.    But-for Defendant's breach of its duty of care, the Data Breach would not have

10   occurred and Plaintiff's and Class Members' PII would not have been accessed by an

11   unauthorized and malicious party.

12        97.    As a direct and proximate result of the Defendant's negligence, Plaintiff and Class

13   Members have been injured and are entitled to damages in an amount to be proven at trial.

14   Plaintiff and Class Members have suffered, and will continue to suffer, economic damages and

15   other injury and actual harm in the form of, among other things, (1) a present and imminent,

16   immediate and the continuing increased risk of identity theft and identity fraud—risks justifying

17   expenditures for protective and remedial services for which they are entitled to compensation;

18   (2) invasion of privacy; (3) breach of the confidentiality of their PII; (5) deprivation of the value

19   of their Private Information, for which there is a well-established national and international

20   market; and/or (6) the financial and temporal cost of monitoring credit, monitoring financial

21   accounts, and mitigating damages.

22   //

23

CLASS ACTION COMPLAINT - 24

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

**COUNT II**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**RCW 19.86.010, *et seq.*,**
**(On behalf of Plaintiff and the National Class)**

3

4

98.     Plaintiff incorporates by reference the foregoing allegations of fact as if fully set

forth herein.

5

6

99.     The Washington State Consumer Protection Act, RCW 19.86.020 (the "CPA")

7

prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as

those terms are described by the CPA and relevant case law.

8

9

100.    Defendant is a "person" as described in RWC 19.86.010(1).

10

101.    Defendant engages in "trade" and "commerce" as described in RWC 19.86.010(2)

11

in that it engages in the sale of services and commerce directly and indirectly affecting the

people of the State of Washington.

12

13

102.    By virtue of the above-described wrongful actions, inaction, omissions, and want

14

of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in

15

unlawful, unfair and fraudulent practices within the meaning, and in violation of, the CPA, in

16

that Defendant's practices were injurious to the public interest because they injured other

persons, had the capacity to injure other persons, and have the capacity to injure other persons.

17

18

103.    In the course of conducting its business, Defendant committed "unfair or

19

deceptive acts or practices" by, among other things, knowingly failing to ensure the safeguarding

20

and protection of Plaintiff's and Class Members' PII by the entities to whom it provided that PII,

21

and by violating the common law alleged herein in the process. Plaintiff and Class Members

22

reserve the right to allege other violations of law by Defendant constituting other unlawful

23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    business acts or practices. As described above, Defendant's wrongful actions, inaction,

2    omissions, and want of ordinary care are ongoing and continue to this date.

3            104.    Defendant also violated the CPA by concealing from Plaintiff and Class Members

4    information regarding the unauthorized release and disclosure of their PII. If Plaintiff and Class

5    Members had been notified in an appropriate fashion, and had the information not been hidden

6    from them, they could have taken precautions to safeguard and protect their PII and identities.

7            105.    Defendant's above-described wrongful actions, inaction, omissions, want of

8    ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair or

9    deceptive acts or practices" in violation of the CPA in that Defendant's wrongful conduct is

10   substantially injurious to other persons, had the capacity to injure other persons, and has the

11   capacity to injure other persons.

12           106.    The gravity of Defendant's wrongful conduct outweighs any alleged benefits

13   attributable to such conduct. There were reasonably available alternatives to further Defendant's

14   legitimate business interests other than engaging in the above-described wrongful conduct.

15           107.    As a direct and proximate result of Defendant's above-described wrongful

16   actions, inaction, omissions, and want of ordinary care that directly and proximately caused the

17   Data Breach and its violations of the CPA, Plaintiff and Class Members have suffered, and will

18   continue to suffer, economic damages and other injury and actual harm in the form of, among

19   other things, (1) a present and imminent, immediate and the continuing increased risk of identity

20   theft and identity fraud—risks justifying expenditures for protective and remedial services for

21   which they are entitled to compensation; (2) invasion of privacy; (3) breach of the confidentiality

22   of their PII; (5) deprivation of the value of their Private Information, for which there is a well-

23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

established national and international market; and/or (6) the financial and temporal cost of monitoring credit, monitoring financial accounts, and mitigating damages.

108.    Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of herself and the Class, seek restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to ensure the safeguarding and protection of Plaintiff's and Class Members' PII by the entities to whom it provides that PII.

109.    Plaintiff, on behalf of herself and Class Members, also seeks to recover actual damages sustained by each Class Member together with the costs of the suit, including reasonable attorneys' fees. In addition, Plaintiff, on behalf of herself and Class Members, requests that this Court use its discretion, pursuant to RCW 19.86.090, to increase the damages award for each Class Member by three times the actual damages sustained, not to exceed $25,000.00 per Class Member.

**COUNT III**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On behalf of Plaintiff and the National Class)**

110.    Plaintiff incorporates by reference the foregoing allegations of fact as if fully set forth herein.

111.    Defendant entered into written contracts with its clients to provide risk management and consulting services.

112.    In exchange, Defendant agreed, in part, to implement adequate security measures to safeguard the PII of Plaintiff and the Class and to timely and adequately notify them of the Data Breach. Indeed, Defendant's privacy Policy states that "Milliman has appropriate technical

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

and organizational measures in place to protect against unauthorized or unlawful processing of Personal Data and against accidental loss or destruction of, or damage to, Personal Data held or processed by Milliman. If Milliman forwards Personal Data to any third party, Milliman requires that those third parties have appropriate technical and organizational measures in place to comply with this Privacy Policy and applicable laws."[20]

113.    These contracts were made expressly for the benefit of Plaintiff and the Class, as Plaintiff and Class Members were the intended third-party beneficiaries of the contracts entered into between Defendant and its clients. Defendant knew that, if it were to breach these contracts with its clients, the clients' current and former customers—Plaintiff and Class Members—would be harmed.

114.    Defendant breached the contracts it entered into with its clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff's PII from unauthorized disclosure to third parties, (iii) failing to perform due diligence and to verify, audit, or monitor the integrity of third party networks on which it shared PII, and (iv) failing to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

115.    Plaintiff and Class Members were harmed by Defendant's breach of its contracts with its clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

//

//

---

[20] *See* https://us.milliman.com/en/privacy-policy-us.

CLASS ACTION COMPLAINT - 28

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff, on behalf of herself and Class Members, requests judgment

3  against Defendant and that the Court grant the following:

4      (a)    That the Court determine that Plaintiff's claims are suitable for class treatment

5  and certify the proposed Classes pursuant to Fed. R. Civ. P. 23;

6      (b)    That the Court appoint Plaintiff as representative of the Classes;

7      (c)    That Plaintiff's counsel be appointed as counsel for the Classes;

8      (d)    That the Court award compensatory, statutory, and exemplary damages;

9      (e)    In the alternative, that the Court award nominal damages as permitted by law;

10     (f)    That the Court award injunctive or other equitable relief that directs Defendant to

11  provide Plaintiff and the Classes with free identity theft protection and credit monitoring for their

12  respective lifetimes, and to ensure that its vendors implement reasonable security procedures and

13  practices to protect customers' PII that conform to relevant federal and state guidelines and

14  industry norms;

15     (g)    That the Court award reasonable costs and expenses incurred in prosecuting this

16  action, including attorneys' fees and expert fees; and

17     (i)    Such other relief as the Court may deem just and proper.

18

**DEMAND FOR JURY TRIAL**

19     Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues properly

20  triable to a jury in this case.

21     //

22     //

23

CLASS ACTION COMPLAINT - 29

1    Dated: August 14, 2023              By: s/*Kaleigh N. Boyd*
                                         Kaleigh N. Boyd, WSBA #52684
2                                        **TOUSLEY BRAIN STEPHENS PLLC**
                                         1200 Fifth Avenue, Suite 1700
3                                        Seattle, WA 98101
                                         Tel: (206) 682-5600/Fax: (206) 682-2992
4                                        kboyd@tousley.com

5                                        M. Anderson Berry*
                                         aberry@justice4you.com
6                                        Gregory Haroutunian*
                                         gharoutunian@justice4you.com
7                                        Brandon P. Jack*
                                         bjack@justice4you.com
8                                        **CLAYEO C. ARNOLD**
                                         **A PROFESSIONAL CORPORATION**
9                                        865 Howe Avenue
                                         Sacramento, CA 95825
10                                       Telephone: (916) 239-4778
                                         Fax: (916) 924-1829
11
                                         * *Pro Hac Vice* Application Forthcoming
12
                                         *Attorneys for Plaintiff and the Proposed Class*
13

14

15

16

17

18

19

20

21

22

23

CLASS ACTION COMPLAINT - 30